**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(***West Palm Beach Division***)
www.flsb.uscourts.gov

IN RE:　　　　　　　　　　　　　　　　　　　　CASE NO. 23-11339-MAM

　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11

ATLANTIC ACCEPTANCE CORP.,


　　　　　　Debtor.
_____/

## PLAINTIFFS' VERIFIED EMERGENCY MOTION FOR ACCESS TO CRITICAL CERTIFICATE OF TITLE MANAGEMENT SOFTWARE AND SERVICING RECORDS

　　　Secured Creditors Walter Auto Loan Trust, AgoraTrade, LLC, AgoraTrade LLC as Trust Manager and Beneficiary of the Walter Auto Loan Trust, Agora Data, Inc. and Walt, LLC ("Agora"), by and though their undersigned counsel, hereby submit this Verified Emergency Motion ("Motion") and sets forth:

### PRELIMINARY STATEMENT – RELIEF REQUESTED[1]

　　　Agora files the instant Motion against the Debtor seeking: i) access to Debtor's certificate of title software program, Auto Data Direct ("ADD 123"), and to prohibit Debtor from voiding or releasing liens to vehicles securing Retail Installment Sales Contracts ("RICs" or "Receivables") sold to Agora under a Master Receivables Agreement ("MRA"); (ii) produce to Agora any notices received by mail or email from impounds, insurance companies, dealers, bankruptcy courts; (iii) cease all communications with Agora's customers and the dealers; and (iv) refer any inquiries from

---

[1] Should an expedited hearing be set, undersigned counsel respectfully requests the Court not hold the hearing on March 27, 2023 due to an in-person trial conflict in the case of In Re: Florida Safety Institute, LLC, Middle District of Florida, Case No. 3:22-bk-01926-JAB.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400

**CASE NO.: 23-11339-MAM**

Agora's customers to Agora. Agora requires access to ADD123 to ensure that the certificates of title to the vehicles that are collateral to the Retail Installment Sales Contracts it purchased from Debtor properly note Agora or Atlantic Acceptance as the first lienholder. Further, Debtor is required to turn over all mail and emails from impounds, insurance companies, dealers, bankruptcy courts, and paper titles because the MRA executed between the parties requires Debtor to do so and it is critical for proper loan servicing. Additionally, Agora requires the bankruptcy notices to ensure it is not violating the automatic stay, or court orders. Moreover, Agora requires these notices to minimize fees, fines, risks of loss due to lien foreclosures or abandonment. Finally, Agora requires the Debtor to cease all communications with Agora's customers and dealers and to refer all Agora's customers' inquiries to Agora to prevent any interference with Agora's ownership of the loans, or with its loan servicing.

1. Agora is a financial technology company that provides independent automobile dealerships and finance companies with loan performance analytics and affordable access to capital.

2. Atlantic Acceptance Corp,. ("Debtor") is a for-profit corporation duly organized under the laws of the state of Florida with its principal place of business in Palm Beach County, Florida.

3. Debtor provides consumer financing for the purchase of automobiles from dealers with whom Debtor conduct business. When the dealers' customers purchase vehicles on credit, they execute a RIC, that specifies the customer's monthly payments and makes clear that if the customer defaults under the RIC the vehicle may be repossessed and sold.

4. On June 17, 2022, Walter Auto Loan Trust and Debtor executed an MRA whereby Debtor agreed to "sell, transfer, assign, set over and otherwise convey to Plaintiffs … all right title

CASE NO.: 23-11339-MAM

and interest in, to and under" RICs Defendants originated. A redacted copy of the MRA is attached hereto as **Exhibit 1**.

5. On or about September 30, 2022, WALT, LLC, and Debtor executed a Second MRA whereby Debtor agreed to "sell, transfer, assign, set over and otherwise convey to Plaintiffs … all right title and interest in, to and under" RICs Defendants originated. A redacted copy of the second MRA is attached hereto as **Exhibit 2**.

6. Pursuant to the MRAs, Debtor sold seven hundred and forty-seven (747) RICs originated by them to Agora. A list of the RICs purchased by Agora is attached as **Exhibit 3.** Once a portfolio of RICs is sold, all of Debtor's right, title and interest in, to, and under the portfolio is transferred to Agora as of the "Closing Date" as that term is defined in the MRAs.

7. As an express condition of the MRAs, each portfolio sold to Agora would be classified as a "True Sale" for purposes of the Uniform Commercial Code ("UCC") - meaning that at the time of the closing of the purchase, the RICs purchased by Agora were no longer Debtor's property.

8. Agora purchased hundreds of Receivables from Debtor. Receivables are defined by the MRAs as the RICs or Contracts, subject of the MRAs purchased by, and transferred to, Agora.

9. Shortly after Agora purchased the Receivables, the customers who purchased the vehicles were informed of the sale and assignment of the RICs and were informed where payments should be directed in the future. (The customers are referred to in the MRAs as "Obligors").

10. As part of the sale of the RICs, Agora took possession of the original RICs executed by the Obligors which evidence the Receivables. Such originals constitute "tangible chattel paper" under the UCC. Agora's taking possession of the chattel paper perfected the sale as required under the UCC.

11. Agora own these original RICs and the Receivables.

12. Agora paid good and valuable monetary consideration to Debtor when Agora, in good faith, purchased the Receivables from Debtor and took possession of the original RICs representing the Receivables in the ordinary course of its business. Indeed, Agora became a bona fide purchaser of the Receivables when it purchased and obtained possession of them.

13. Agora, through their agent, Westlake Services LLC ("Westlake"), began servicing the RICs that were sold to it.

### A. *Defendants' Failure to Fund Dealers*

14. Automobile dealerships contract with Debtor to fund consumer loans to customers to purchase vehicles.

15. After the customers execute an RIC, the dealer immediately assigns the RIC to the Debtor, which is noted on the RIC.

16. Debtor subsequently sells the RIC to Agora, which remits the purchase funds to the Debtor.

17. Debtor is required to pay the automobile dealerships before Agora pays the Debtor for acquisition of the RICs but Debtor failed to do so.

18. When Debtor sold the RICs to Agora, Debtor furnished falsified and inaccurate ACH forms with the RICs and originating loan documents to Agora. Also, Debtor, on numerous occasions, furnished checks to the dealerships that bounced for insufficient funds. Agora later discovered that numerous automobile dealerships had not been provided with the promised funding by Debtor.

19. Agora made demand ("Demand") against Debtor to provide the promised financing to the originating dealerships. A copy of the Demand is attached as **Exhibit 4.**

20. Since furnishing the Demand, dozens of additional dealerships have come forward to advise Agora that the Debtor failed to fund the RICs that Agora was assigned.

21. As of the filing of this Motion, Agora have identified over one hundred (100) dealerships that have claimed that they have not been funded in violation of the Debtor's representations and warranties in the MRAs.

22. Attached to this Motion are forty-one declarations submitted to Agora by dealerships across the country attesting to Debtor's failure to fund deals that were assigned to them and then subsequently assigned to Agora. The declarations are attached as **Composite Exhibit 5.**

23. The dealers attest that their businesses have been irreparably harmed as a result of Debtor's failure to fund the purchase of the RICs from the dealerships and that the dealers' relationships with their customer base have been adversely affected. *See* Exhibit 5.

24. As a result of Debtor's failure to fund dealerships and failure to respond to inquiries from dealerships, Agora and its undersigned counsel have had to expend significant resources responding to inquiries from dealerships concerning the funding they were promised.

**B. *Debtor's Failure to Deliver Title, Failure to Assure Valid Finance Transactions, and Failure to Furnish Agora with Critical Servicing Records.***

25. The MRAs require a valid certificate of title for each vehicle that serves as collateral for the portfolio of RICs that are transferred to Agora and that each certificate of title notes Agora holds a valid first security lien. Ex. 1, § 4.2(o).

26. Despite the foregoing requirements, Agora has discovered Debtor has failed to perfect Agora's liens, or have released liens on vehicles that serve as collateral on purchased RICs without Agora's express, written permission.

CASE NO.: 23-11339-MAM

27. Debtor has failed, and continues to fail, to deliver clear marketable title to 239 vehicles for RICs purchased and funded by Agora. Debtor also failed to deliver to Agora certificates of title with the Receivable files for multiple vehicles. A list of the vehicles without title is attached hereto as **Exhibit 6.** Debtor was provided with multiple notices of these failures prior to the filing of Agora's lawsuit against the Debtor and Debtor failed to cure these material breaches.

28. On January 4, 2023, Agora filed a lawsuit against the Debtor, and its related entities, in the United States District Court, Southern District of Florida, Case No. 23-cv-80007 ("Lawsuit").[2]

29. On February 20, 2023, Debtor filed its Voluntary Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code. [DE 1].

30. On February 21, 2023, this Honorable Court entered an order authorizing the Debtor to continue operation of its business as a debtor-in-possession. [DE 7]. Accordingly, Debtor continues to operate its business.

31. Prior to Agora filing the Lawsuit and Debtor filing the instant bankruptcy, Debtor revoked Agora's access from ADD123, which is used, among other things, to apply for certificates of title with a state's department of motor vehicles, notes the secured lender's lien, or releases the lien.

---

[2] Agora respectfully requests this Honorable Court to take judicial notice of the Lawsuit. "Federal Rule of Evidence 201 permits a court to 'judicially notice' a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Williams v. Dep't of Corrections*, 824 Fed. App'x 914, 916 (11th Cir. 2020). "[J]udicial notice of court records is ordinarily confined to determining what happened in the course of a proceeding – when a plaintiff filed a complaint, what claims were argued and adjudicated, and so on." *Regions Bank v. NBV Loan Acquisition Member, LLC*, No. 21-23578-CIV-Moreno/Goodman, 2022 WL 17359786, at *2 (S.D. Fla. Dec.1,2020).

CASE NO.: 23-11339-MAM

32. Agora requires access to ADD123 to ensure security liens on the vehicles used as collateral securing the RICs have been perfected in Agora's or Debtor's name. Agora's ability to protect and manage their liens on the vehicles that secure the Receivables is *critical* to properly service the RICs, to Agora's customers' use and enjoyment of the vehicles, and to prevent future priority disputes that may arise in the form of towing liens, mechanic liens, or if the vehicles are stolen.

33. Debtor is contractually obligated to provide Agora with access to ADD123, and essential when servicing the RICs to ensure that Agora complies with the Federal Driver's Privacy Protection Act and so that they can exchange vehicle, title and lien information electronically with a state's department of motor vehicles.

34. More specifically, pursuant to Section 2.7 of the MRAs:

> "[Debtor] shall (1) provide [Agora] a full data file with respect to all of Originator's new originations on a monthly basis and (2) provide [Agora] with log-in credentials to [Debtor's] dealer management system granting [Agora] read, download and data extra capabilities.

35. Debtor's revocation of Agora's access to ADD123 is a material breach of the MRAs, and demonstrates its continued interruption of Agora's ability to properly service the RICs it purchased, causing extensive, continuing damage to Agora and its relationship with its customers. *See* Agora's Complaint [DE 1] filed in the Lawsuit, *passim*.

36. Additionally, Debtor has failed to furnish Agora with the paper titles, which it would need in the event a customer chooses to move from one state to another. Debtor has also failed to furnish Agora with other important documents associated with the RICs Agora purchased including correspondences and notices from insurance companies, bankruptcy courts, and

impound companies[3] that may claim an interest in the vehicles. These documents are essential to Agora's security interests and to properly service the loans by ensuring Agora does not violate any automatic stay or other court orders; minimize fees and fines that may result in the imposition of liens that could ultimately deprive it of their secured lien; or lose the vehicle due to abandonment.

### C. *Debtor's Improper Release of Liens.*

37. Debtor has improperly released the liens reflected on the title of multiple vehicles securing the RICs acquired by Agora without Agora's consent. Agora cannot provide a complete list because Debtor revoked its access to ADD123, which would provide this information.

38. Specifically, after Agora purchased and received assignment of multiple RICs pursuant to the MRAs, Debtor released liens reflected on vehicles' title to various dealerships despite Agora's acquisition of superior bona fide purchaser interest in the vehicles.

39. Further, Debtor released the title to these vehicles *after* Agora notified the consumers of the transfer in servicing of RICs and *after* Agora's loan servicer began receiving payments under the RICs.

40. This has caused significant harm to Agora's innocent consumers who purchased vehicles from dealerships and were using and enjoying the vehicles while making payment to Agora.

41. Additionally, these actions have, and continue to cause, significant reputational damage to Agora because several dealerships have contacted Agora demanding payment under the impression that Agora is affiliated with Debtor, which it is not.

---

[3] States across the country provide rights to tow companies, body shops, and government agencies to impose liens on vehicles in the event that charges for mechanical or towing work goes unpaid. In connection with many states' statutory schemes governing these liens, entities imposing liens on vehicles have the right to foreclose their liens and sell the vehicles provided that the owners and interested parties (including lienors) are provided with notice. Without the notation of Plaintiffs' liens on the vehicles or the customer's names on title, Plaintiffs and Plaintiffs' customers are at risk of not receiving these notices and potentially losing their filed security interests in the vehicles.

42. Upon the filing of a Chapter 11 bankruptcy, "a fiduciary is installed to manage the estate *in the interest of the creditors*. §§ 1106, 1107(a). This fiduciary, often the debtor's existing management team, as 'debtor in possession.' 1101(1), 1104." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017). "One of the most difficult concepts an individual Chapter 11 debtor has to grasp is that once he files bankruptcy he has a fiduciary duty to his creditors to act in the best interest of the bankruptcy estate. That means [the debtor in possession] must generally put the interest of his creditors ahead of his own interests." *In re Climate Control Mech. Servs., Inc.*, 585 B.R. 192, 201 (Bankr. M.D. Fla. 2018) (internal quotation marks and citations omitted). "To accomplish his fiduciary responsibility, he must act in a transparent, forthright, and candid manner and work to benefit the bankruptcy estate even if that may be a detriment to him individually." *Id.* (internal quotation marks and citation omitted).

43. "[A debtor in possession] cannot avoid the secured creditor whose security interest was perfected on the petition date…." *In re Colony Beach & Tennis Club, Inc.*, 508 B.R. 468, 480 (Bankr. M.D. Fla. 2014). "[A] security interest in a motor vehicle is perfected by the secured party noting its interest on the certificate of title." *In re Carcorp, Inc.*, 272 B.R. 365, 370 (Bankr. S.D. Fla. 2002) (citing Fla. Stat. § 679-302(3)(b); Fla. Stat. § 319.27(1)).

> Florida's Certificate of Title Statute § 319.27(1) provides in pertinent part:
>
> Each lien, mortgage or encumbrance on a motor vehicle [] title in this state shall be noted upon the face of the Florida certificate of title or on a duplicate or corrected copy thereof, as provided by law ….

*Id.*

CASE NO.: 23-11339-MAM

45. Here, Debtor has a fiduciary obligation to act in Agora's best interests as one of its secured creditors by ensuring it perfects the liens on all vehicles that represent the collateral to secure the RICs purchased by Agora.

46. However, based on Debtor's history of failing to perfect liens, or outright releasing liens on vehicles to RICs Agora has purchased, Agora requires access to ADD123 to ensure its liens have been perfected and to ensure Debtor will not improperly release the liens to Agora's detriment.

47. Allowing Agora access to ADD123, as provided for in the MRAs, works for the benefit of all Debtor's creditor's and the bankruptcy estate as a whole, because it will provide adequate assurances to Agora that its liens will be protected.

48. Moreover, based on Debtor's history, the Court should further order the Debtor to (i) produce to Agora any notices received by mail or email from impounds, insurance companies, dealers, bankruptcy courts; (ii) cease all communications with Agora's consumers and the dealers; and (iii) refer any inquiries from Agora's customers to Agora. Entering such an order will further provide adequate assurances to Agora that the Debtor will not breach its fiduciary duties by improperly interfering with Agora's ownership and servicing of the RICs.

49. In summary, Agora requires access to ADD123 to ensure that the certificates of title to the vehicles that are collateral to the RICs it purchased from Debtor properly note Agora or Atlantic as the first lienholder. Further, Debtor is required to provide Agora with paper titles, and turn over all mail and emails from impounds, insurance companies, dealers, bankruptcy courts, paper titles because the MRAs executed between the parties requires Debtor to do so and it is critical for Agora to properly service the loans. Otherwise, Agora could be found to have violated an automatic stay or other court order, or lose its security interest because of the imposition of

**CASE NO.: 23-11339-MAM**

towing and/or storage liens. Finally, Agora requires the Debtor to cease all communications with Agora's customers and dealers and to refer all Agora's customers' inquiries to Agora to prevent any interference with Agora's ownership of the loans, or with its loan servicing

## **VERIFICATION**

**Under penalties of perjury under the laws of the United States, I declare that I have read the foregoing, and that to the best of my knowledge the facts alleged herein are true and correct.**

_____

**Chris Hawke**
**Chief Financial Officer / Chief Legal Officer**
**Agora Data, Inc.**

CASE NO.: 23-11339-MAM

Respectfully submitted this 20 day of March, 2023.

>Respectfully submitted,
>*/s/ James R. Liebler II*
>JAMES R. LIEBLER II
>Florida Bar No. 115348
>E-mail: JRLII@lgplaw.com
>mkv@lgplaw.com
>IRA SCOT SILVERSTEIN
>Florida Bar No. 9636
>Email: iss@lgplaw.com
>**LIEBLER, GONZALEZ & PORTUONDO**
>Courthouse Tower - 25th Floor
>44 West Flagler Street
>Miami, FL 33130
>Telephone: (305) 379-0400
>Fax: (305) 379-9626
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of March, 2023, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

>*/s/ James R. Liebler II*
>JAMES R. LIEBLER II
>IRA SCOT SILVERSTEIN